UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES, INC., | § § § § § § § § § § § | |
| Plaintiff, | | |
| vs. | | Civil Action No. 5:05-CV-157-DF |
| ABBOTT LABORATORIES, INC., | | |
| Defendant. | | |

## **ABBOTT LABORATORIES' ANSWER AND COUNTERCLAIMS**

Defendant Abbott Laboratories ("Abbott"), an Illinois corporation erroneously named as "Abbott Laboratories Inc." in the Complaint, through undersigned counsel, hereby responds to the Complaint of Retractable Technologies, Inc. ("RTI") as follows:

## **INTRODUCTION**

Abbott denies the allegations contained in the Complaint's unnumbered introductory paragraphs, except it admits that RTI is a company located in Little Elm, Texas.

Abbott further states that to the extent any heading in the Complaint is construed as containing allegations, Abbott denies such allegations.

## **JURISDICTION AND VENUE**

1. Abbott admits the allegations contained in Paragraph 1 of the Complaint.

2. Abbott denies the allegations contained in Paragraph 2 of the Complaint.

## **PARTIES**

3. Abbott admits the allegations contained in Paragraph 3 of the Complaint.

4.     Abbott denies the allegations contained in Paragraph 4 of the Complaint, except it admits the allegations contained in the first sentence of Paragraph 4 and admits that it does business in the State of Texas.

5.     Abbott admits the allegations contained in Paragraph 5 of the Complaint.

6.     Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, except it admits that some needle sticks can spread infectious diseases.

7.     Abbott denies the allegations contained in Paragraph 7 of the Complaint, except it admits that retraction of the needle into the barrel of the hypodermic product may help prevent needle stick injuries.

8.     Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint, except that it admits that RTI's devices are designed to be single-use products.

9.     Abbott denies the allegations contained in Paragraph 9 of the Complaint.

10.    Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.    Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.    Abbott admits the allegations contained in Paragraph 12 of the Complaint.

13.    Abbott denies the allegations contained in Paragraph 13 of the Complaint, except it admits the allegations contained in the first and second sentences of Paragraph 13 of the Complaint.

## FACTS

14.     Abbott denies the allegations contained in Paragraph 14 of the Complaint, except it admits that in 1997 Abbott and RTI had preliminary discussions regarding RTI's products.

15.     Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16.     Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint.

17.     Abbott denies the allegations in Paragraph 17 of the Complaint, except it admits that representatives of Abbott and RTI met in 1999 and the first half of 2000 to discuss the marketing and distribution of RTI's products.

18.     Abbott denies the allegations contained in Paragraph 18 of the Complaint.

19.     Abbott denies the allegations contained in the first sentence of Paragraph 19 of the Complaint, except it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of Paragraph 19.

20.     Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint.

21.     Abbott denies the allegations contained in Paragraph 21 of the Complaint.

22.     Abbott denies the allegations contained in Paragraph 22 of the Complaint, except it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 22.

23.     Abbott denies the allegations contained in Paragraph 23 of the Complaint.

24. Abbott denies the allegations contained in Paragraph 24 of the Complaint.

25. Abbott denies the allegations contained in Paragraph 25 of the Complaint.

26. Abbott denies the allegations contained in Paragraph 26 of the Complaint.

27. Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint.

28. Abbott denies the allegations contained in Paragraph 28 of the Complaint.

29. Abbott denies the allegations contained in Paragraph 29 of the Complaint.

30. Abbott denies the allegations contained in Paragraph 30 of the Complaint.

31. Abbott denies the allegations contained in Paragraph 31 of the Complaint, except admits that the National Marketing and Distribution Agreement ("NMDA") between Abbott and RTI is dated May 2, 2000.

32. Abbott denies the allegations contained in Paragraph 32 of the Complaint, and refers to the NMDA for its contents.

33. Abbott denies the allegations contained in Paragraph 33 of the Complaint, and refers to the NMDA for its contents.

34. Abbott denies the allegations contained in Paragraph 34 of the Complaint, and refers to the NMDA for its contents.

35. Abbott denies the allegations contained in Paragraph 35 of the Complaint, and refers to the NMDA for its contents.

36. Abbott denies the allegations contained in Paragraph 36 of the Complaint, except that it admits that Exhibit 9.1, captioned "Forecasted Sales", was attached to the NMDA.

37. Abbott denies the allegations contained in Paragraph 37 of the Complaint.

38. Abbott denies the allegations contained in Paragraph 38 of the Complaint.

39. Abbott denies the allegations contained in Paragraph 39 of the Complaint.

40. Abbott denies the allegations contained in Paragraph 40 of the Complaint.

41. Abbott denies the allegations contained in Paragraph 41 of the Complaint.

42. Abbott denies the allegations contained in Paragraph 42 of the Complaint.

43. Abbott denies the allegations contained in Paragraph 43 of the Complaint.

44. Abbott denies the allegations contained in Paragraph 44 of the Complaint, except it admits that it spun off its hospital products division some time after the NMDA was terminated.

45. Abbott denies the allegations contained in Paragraph 45 of the Complaint, except it admits that one of Humira's indications is for the treatment of rheumatoid arthritis.

46. Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 of the Complaint, except it admits that Humira is available in pre-filled glass syringes.

47. Abbott denies the allegations contained in Paragraph 47 of the Complaint, and refers to its annual reports for their contents.

48. Abbott denies the allegations contained in Paragraph 48 of the Complaint.

49. Abbott denies the allegations contained in Paragraph 49 of the Complaint.

50. Abbott denies the allegations contained in Paragraph 50 of the Complaint.

51. Abbott denies the allegations contained in Paragraph 51 of the Complaint.

52. Abbott denies the allegations contained in Paragraph 52 of the Complaint.

## CAUSES OF ACTION

### COUNT I:  BREACH OF CONTRACT

53. Abbott incorporates by reference its responses to Paragraphs 1 through 52 of the Complaint as if fully and expressly set forth herein.

54. Abbott denies the allegations contained in Paragraph 54 of the Complaint, except it admits that Abbott and RTI were parties to a contract, the NMDA.

55. Abbott denies the allegations contained in Paragraph 55 of the Complaint.

56. Abbott denies the allegations contained in Paragraph 56 of the Complaint.

57. Abbott denies the allegations contained in Paragraph 57 of the Complaint.

### COUNT II:  FRAUD

58. Abbott incorporates by reference its responses to Paragraphs 1 through 57 of the Complaint as if fully and expressly set forth herein.

59. Abbott denies the allegations contained in Paragraph 59 of the Complaint.

60. Abbott denies the allegations contained in Paragraph 60 of the Complaint.

61. Abbott denies the allegations contained in Paragraph 61 of the Complaint.

### COUNT III:  ATTORNEYS' FEES

62. Abbott incorporates by reference its responses to Paragraphs 1 through 61 of the Complaint as if fully and expressly set forth herein.

63. Abbott is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of the Complaint.

### COUNT IV:  PUNITIVE DAMAGES

64. Abbott incorporates by reference its responses to Paragraphs 1 through 63 of the Complaint as if fully and expressly set forth herein.

65. Abbott denies the allegations contained in Paragraph 65 of the Complaint.

66. Abbott denies the allegations contained in Paragraph 66 of the Complaint.

### AFFIRMATIVE AND ADDITIONAL DEFENSES

Abbott hereby asserts the following additional or affirmative defenses to RTI's claims.

a. The Complaint fails to state a claim upon which relief can be granted.

b. The Complaint fails to plead fraud with the requisite particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure, and fails to state a claim for fraud upon which relief can be granted.

c. The plaintiff did not justifiably rely to its detriment on the alleged misrepresentations.

d. If the plaintiff relied on the alleged misrepresentations, its reliance was unreasonable.

e. The doctrines of unclean hands, laches, waiver, and/or estoppel bar the claims of plaintiff.

f. The plaintiff's claims are barred by the applicable statute of limitations.

g. The plaintiff's claims are barred by the Statute of Frauds.

h. The plaintiff's claims are barred by a failure of consideration.

i. The plaintiff impeded Abbott's performance under the contract by failing to honor its obligations of good faith and fair dealing.

j. Plaintiff has failed to mitigate its alleged damages.

k. Abbott has substantially performed all of its contractual obligations to the plaintiff.

  l.  The plaintiff breached warranties it made with respect to its products.

  m.  Abbott may be entitled to a setoff against all damages awarded to the plaintiff.

  n.  The plaintiff's claims are barred by payment and seek impermissible double recovery insofar as the plaintiff seeks damages for which RTI was or will be compensated by other persons.

  o.  The Complaint fails to state a claim upon which relief can be granted for the recovery of attorneys' fees and other legal costs and expenses.

  p.  The Complaint fails to state a claim for punitive damages upon which relief can be granted.

  q.  The claims for punitive damages are barred by the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

  Abbott reserves the right to plead additional affirmative defenses based on facts uncovered during the course of discovery.

## COUNTERCLAIMS

  For its counterclaims against RTI, Abbott states as follows:

## PARTIES

  1.  Abbott is an Illinois corporation with its principal place of business in Illinois.

  2.  RTI is a Texas corporation with its principal place of business in Texas.

  3.  This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because the matter in controversy herein exceeds the sum or

value of $75,000 exclusive of interests and costs and is between citizens of different states.

## FACTS

4.  In May 2000, Abbott and RTI entered into a National Marketing and Distribution Agreement ("NMDA") for the marketing and distribution of RTI's retractable needle VanishPoint products ("RTI's products") to the hospital market throughout the United States ("Hospital Market").

5.  Under the terms of the NMDA, Abbott used its sales and marketing personnel to promote and sell RTI's products in the Hospital Market. Abbott purchased RTI's products at a set price, called the Transfer Price, and then re-sold RTI's products to Hospital Market customers. The Transfer Price was to remain firm for the first calendar year, but the NMDA stipulated that the parties "shall meet annually to discuss changes to Transfer Prices for the Products." The parties contemplated that the Transfer Prices would decrease in response to market forces and RTI's ability to reduce its costs of producing its products.

6.  At the end of each calendar quarter, RTI was required to pay Abbott a marketer fee of ten cents ($.10) per unit of RTI products sold in the preceding calendar quarter.

7.  The NMDA specified that Abbott was the non-exclusive marketer and distributor of RTI products to the Hospital Market and that RTI and Abbott would be the only marketers of RTI's products in the Hospital Market. The NMDA further provided that if any customer agreed to a purchasing agreement with Abbott and purchased a

product through that agreement, Abbott would have the sole and exclusive right to distribute RTI's products to that customer.

8. The NMDA provided for an initial term of five years, not to extend beyond June 30, 2005. It also contained a provision indicating that the agreement would automatically renew for a three-year term if Abbott achieved total sales of at least eighty-five percent (85%) of the cumulative forecasted sales described in an exhibit to the NMDA.

9. In accord with the substantive provisions of the NMDA, Abbott purchased huge quantities of RTI's products at the Transfer Price, and devoted substantial resources to the marketing and selling of RTI's products in the Hospital Market.

10. Abbott's efforts under the NMDA were significantly hindered by unexpected resistance to the RTI products in the Hospital Market, due primarily to the uncompetitive high prices charged by RTI for its products, ill will engendered by RTI's sales tactics in the Hospital Market, and concerns over product performance/failure issues with RTI's products.

11. On August 15, 2003, RTI gave notice that it was terminating the NMDA pursuant to Section 9.4, effective sixty days from written notice of termination, or October 14, 2003.

## COUNT 1: BREACH OF CONTRACT
## (BREACH OF SECTION 9.4 OF THE NMDA)

12. Abbott repeats and re-alleges the allegations set forth in Paragraphs 1-11 of its Counterclaims as if fully set forth herein.

13. Section 9.4 of the NMDA allowed either party to terminate the contract upon sixty (60) days' written notice of the other party's breach of a material term or

condition of the NMDA. Section 9.4 provided that termination would not take effect if the other party remedied any breach within the notice period.

14. RTI terminated the NMDA even though Abbott did not breach any material term or condition of the NMDA, and without allowing Abbott an opportunity to remedy any claimed breach. At the time of RTI's termination, Abbott had approximately $2.5 million of RTI's products in its inventory, which it was unable to sell as a result of RTI's wrongful termination, and which RTI failed to buy back.

15. RTI's termination of the NMDA was in bad faith, wrongful, and a breach of the contract between the parties.

16. Abbott is entitled to recover damages for RTI's wrongful termination and breach of the NDMA, including lost marketer fees in an amount in excess of $2.0 million for the remainder of the term of the contract and the value of unsold inventory in the amount of $2.5 million.

### COUNT 2: BREACH OF CONTRACT
### (BREACH OF SECTION 5.4 OF THE NMDA)

17. Abbott repeats and re-alleges the allegations set forth in Paragraphs 1-16 of its Counterclaims as if fully set forth herein.

18. Section 5.4 of the NMDA provided that RTI would make quarterly payments of a marketer fee to Abbott in consideration for Abbott's marketing and distribution of RTI's product.

19. RTI's wrongful termination of the NMDA took effect as of October 14, 2003.

20. Abbott was entitled to the marketer fee for sales of RTI's products up to the termination of the NMDA.

11

21. RTI failed to pay Abbott the marketer fee owed for the second and third quarters of 2003, and failed to pay Abbott the marketer fee owed for the first two weeks of the fourth quarter of 2003.

22. Abbott is entitled to damages in excess of $1.2 million in unpaid Marketer Fees.

### COUNT 3:  BREACH OF CONTRACT
### (BREACH OF SECTION 5.1(a) OF THE NMDA)

23. Abbott repeats and re-alleges the allegations set forth in Paragraphs 1-22 of its Counterclaims as if fully set forth herein.

24. As set forth in section 5.1(a) of the NMDA, Abbott and RTI were required to meet and discuss in good faith changes to the Transfer Price for RTI's products.

25. The parties contemplated that changes would need to be made to the Transfer Price in response to market forces and as RTI lowered the manufacturing costs for its products.

26. RTI breached the NMDA between the parties by failing to discuss changes to the Transfer Price in good faith.  RTI dealt with Abbott unfairly and in bad faith with respect to Transfer Prices, and thereby impeded Abbott's efforts to sell RTI's products in the Hospital Market.

27. Abbott is entitled to damages for RTI's breach of Section 5.1(a) of the NMDA.

### COUNT 4:  BREACH OF CONTRACT
### (BREACH OF SECTIONS 3.7 AND 3.8 OF THE NMDA)

28. Abbott repeats and re-alleges the allegations set forth in Paragraphs 1-27 of its Counterclaims as if fully set forth herein.

29. Sections 3.7 and 3.8 of the NMDA expressly provided that RTI would provide product samples and demonstrative product to Abbott at no charge.

30. RTI breached sections 3.7 and 3.8 of the NMDA by failing to provide Abbott with product samples and demonstration products for use in marketing.

31. Abbott incurred expenses in excess of $200,000 for the preparation of product samples and demonstration products that should have been provided by RTI.

32. Abbott is entitled to recover these expenses as damages for RTI's breach of the NMDA.

### COUNT 5: BREACH OF CONTRACT
### (BREACH OF SECTION 2.1 OF THE NMDA)

33. Abbott repeats and re-alleges the allegations set forth in Paragraphs 1-32 of its Counterclaims as if fully set forth herein.

34. Section 2.1 of the NMDA specified that Abbott was the non-exclusive marketer and distributor of RTI products to the Hospital Market in the Territory, and that RTI and Abbott "shall be the only marketers of [RTI's products] in the Hospital Market and that RTI "shall not appoint another marketer in the Hospital Market . . . during the term of this Agreement." Section 2.1 further provided that if any customer agreed to a purchasing agreement with Abbott and purchased a product through that agreement, that Abbott would have the sole and exclusive right to distribute to that customer.

35. RTI appointed distributors and permitted them to sell products into the Hospital Market in violation of section 2.1 of the NMDA.

36. RTI's breach of the NMDA has caused Abbott to suffer lost profit, in the form of additional sales to hospitals, that Abbott would have received but for RTI's breach.

## COUNT SIX: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

37. Abbott repeats and re-alleges the allegations set forth in Paragraphs 1-36 of its Counterclaims as if fully set forth herein.

38. RTI is a seller of syringes and blood collection tube holders with retractable needles.

39. RTI's syringes and blood collection tube holder were designed so that following the injection or administration of medication using one of RTI's products, the needle would automatically retract into the barrel of the syringe or tube. The automatic retraction feature of RTI's products was designed to eliminate or significantly reduce the risk that health care workers would experience needle stick injuries or be exposed to potentially contaminated blood.

40. At the time of sale to Abbott, RTI impliedly warranted to Abbott that the RTI products were merchantable and fit for the ordinary purposes for which safety syringes and blood collection tube holders are used. The sales of RTI's products to Abbott were subject to an implied warranty of merchantability under Texas Bus. & Com. § 2.314.

41. The RTI products sold to Abbott were not of merchantable quality, but rather contained defects that resulted in product failures. These defects included, but were not limited to, premature retraction of the needle in the RTI VanishPoint Blood Collection Tube Holder and partial retraction of the needle in RTI VanishPoint syringes.

42. These defects in the products existed at the time of sale and resulted in a breach of the implied warranty of merchantability, rendering RTI's products unfit for the ordinary purposes for which such products were used.

43. Abbott notified RTI of the reported defects and failure of RTI products to perform as warranted. Ultimately, these defects resulted in Abbott's placing a quality hold on all of the RTI VanishPoint Blood Collection Tube Holders in its possession.

44. RTI recalled and recovered certain defective lots of RTI VanishPoint Blood Collection Tube Holders, and represented to Abbott that the remaining lots were cleared for sale to consumers.

45. Contrary to RTI's representations, RTI products purchased by Abbott for resale continued to be defective and failed to perform as warranted.

46. Abbott has suffered damages as a proximate result of RTI's breaches of the implied warranty of merchantability.

## COUNT SEVEN: BREACH OF EXPRESS WARRANTY

47. Abbott repeats and re-alleges the allegations set forth in Paragraphs 1-46 of its Counterclaims as if fully set forth herein.

48. RTI is a seller of syringes and blood collection tube holders with retractable needles.

49. RTI expressly warranted to Abbott that its products were free from defects and were otherwise acceptable for sale to end users. RTI further warranted that the automatic retraction feature of its products eliminated or significantly reduced the risk of needle stick injuries or exposure to potentially contaminated blood.

50. The sales of RTI's products to Abbott were subject to express warranties under Texas Bus. & Com. § 2.313.

51. Contrary to RTI's express warranty, RTI's products were defective in that the automatic retraction feature failed to operate properly, resulting in premature

retractions and partial retractions of the needles in the RTI products. The failure of the RTI products to conform to the express warranties resulted in health care workers experiencing needle stick injuries and being exposed to potentially contaminated blood.

52. Abbott notified RTI of the reported defects and failure of RTI products to perform as warranted.

53. Following an investigation of multiple reports of premature retraction, RTI recalled certain defective lots of VanishPoint Blood Collection Tube Holders that had been sold to Abbott. RTI identified in writing the defective lots of VanishPoint Blood Collection Tube Holders, creating an express warranty that the remaining lots were free of defects and would perform as represented.

54. Contrary to this express warranty, additional lots of the VanishPoint Blood Collection Tube Holders purchased by Abbott have experienced premature retraction problems.

55. Abbott has suffered damages as a proximate result of RTI's breaches of express warranties regarding its products.

## **DAMAGES**

56. RTI's breach of the contract between the parties has caused Abbott to suffer damages, including, but not limited to:

    (a)    lost marketer fees through the end of the term of the contract;

    (b)    earned and unpaid marketer fees through the date of termination of the NMDA;

    (c)    expenses for Abbott's development of sample products and product demonstrations;

    (d)    lost profits on the sales of RTI's product;

    (e)    the value of Abbott's unsold inventory of RTI's product on hand as of the date of the wrongful termination;

    (f)    pre-judgment interest;

    (g)    post-judgment interest;

    (h)    attorneys' fees, legal costs and expenses.

WHEREFORE, Abbott is entitled to compensatory damages in excess of $6,000,000 for RTI's breaches of the contract.

## REQUEST FOR RELIEF

Abbott respectfully requests that this Court:

1. Award Abbott damages in an amount sufficient to compensate Abbott for RTI's breaches of contract and warranty;

2. Award to Abbott its costs and attorneys' fees incurred in the defense and prosecution of this action;

3. Dismiss the Complaint with prejudice and without costs to Abbott; and

4. Award to Abbott such other relief as this Court deems just and equitable.

## JURY DEMAND

Abbott demands a trial by jury.

Respectfully submitted,

**YOUNG, PICKETT & LEE**
4122 Texas Boulevard
P.O. Box 1897
Texarkana, TX  75503
(903) 794-1303
Fax: (903) 792-5098

By: __/s/ Lance Lee_____

                                                Lance Lee
                                                Texas Bar No. 24004762

Paul F. Strain
John A. McCauley
**VENABLE LLP**
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201
(410) 244-7700
Fax: (410) 244-7400

ATTORNEYS FOR ABBOTT
LABORATORIES, INC.

### CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to FED.R.CIV.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy via email transmission, facsimile and/or U.S. Mail this 15th day of July, 2008.

                                                */s/ LanceLee*