**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **RETRACTABLE TECHNOLOGIES INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 5:05-CV-157** |
| **v.** | § | |
| | § | |
| **ABBOTT LABORATORIES, INC.** | § | |
| | § | |
| **Defendant.** | § | |

**O R D E R**

Before the Court is Defendant's Motion to Compel Production of Documents.  Dkt. No.

114.  Also before the Court are Plaintiff's Response, Defendant's Reply, and Plaintiff's Sur-

reply.  Dkt. Nos. 136, 185, and 197, respectively.  Having considered all relevant papers and

pleadings, the Court finds that Defendant's motion should be **granted-in-part and denied-in-**

**part.**

**I.  BACKGROUND**

Plaintiff Retractable Technologies, Inc. ("RTI") filed this suit on August 12, 2005,  Dkt.

No. 1, alleging that Defendant Abbott Laboratories, Inc. ("Abbott") breached a contract it entered

into with RTI, the National Marketing and Distribution Agreement ("NMDA").  In particular,

RTI alleges that Abbott  failed to market RTI's products with efforts "at least commensurate with

those used to market and distribute its own products of similar nature and comparable market

potential."  RTI also alleges fraud on the part of Abbott.  This case is on the Court's July 2010

trial docket.  Defendant now moves to compel production of documents related to various

topics.

## II. PARTIES' POSITIONS AND DISCUSSION

### A. Documents Until December 31, 2008

Abbott requests that RTI produce documents up to and until December 31, 2009. Dkt.

No. 114 at 9. Abbott argues that RTI has refused to produce documents beyond 2005 despite the

fact that RTI's damages expert calculates lost profits through the end of second quarter of 2008.

*Id.* RTI responds that it has provided sales and damages information through 2008 and that,

therefore, Abbott has the information it seeks. Dkt. No. 136 at 11. Abbott replies that it is

entitled to more than just sales and damages information through 2008. Dkt. No. 185 at 5.

According to Abbott, in order to defend against RTI's claims, it "needs access to RTI's internal

assessment of these issues throughout the entire period for which it seeks damages." *Id.* RTI

counters arguing that Abbott's request is untimely and that the requested documents are "wholly

irrelevant to this case." Dkt. No. 197 at 4.

RTI's argument is unpersuasive. This Court adheres to a policy of liberal discovery, and

pursuant to Fed. R. Civ. P. 26(b), a party is entitled to discovery "regarding any matter, not

privileged, that is relevant to the claims or defense of any party." RTI requests damages for the

period 2000 to 2008. As this Court found with respect a topic on which RTI moved to compel

(*see* Order on Plaintiff's Motion to Compel, Dkt. No. 106, filed contemporaneously herewith)

communications other than "sales and damages information" may be relevant to RTI's claim for

damages. Similarly, Abbott should be able to defend against that claim with responsive

documents from the same time period. Accordingly, Abbott's motion to compel as to this topic

should be **granted**. RTI is ordered to produce all responsive documents through December 31,

2008.

## B. Price Information

Abbott requests internal communications and communications with others regarding prices at which RTI's products were sold or offered for sale in the hospital market, documents related to rebates or chargebacks paid or processed by RTI, and communications with group purchasing organizations ("GPO") and hospitals regarding pricing agreements that RTI offered. Dkt. No. 114 at 9.

RTI responds that it has more than met its obligations to produce relevant information on pricing by conducting a reasonable search and by providing Abbott its sales and distributor tracking data bases.  Dkt. No. 136 at 5.  RTI agrees, however, to "produce documents that contain pricing related to GPOs, pricing matrix information, and documents related to distributor tracking/tracing that additionally contain information related to pricing.  *Id.*

In light of RTI's agreement to supplement its production, this portion of Abbott's Motion is **denied without prejudice.**  Abbott may reurge its motion to compel on this topic, if necessary.

## C. Sales Tracing Reports

Abbott requests sales tracing reports generated or submitted to RTI by distributors from 1997 to 2008.  Dkt. No. 114 at 11.  In response, RTI agrees that "[a]lthough any such document is incorporated into the distributor tracking database, in an abundance of caution [RTI] will produce such documents or electronic data it has in its possession after a reasonable search, even though such information is believed to be duplicative of what is contained in the distributor tracking database."  Dkt. No. 136 at 6.

In light of RTI's agreement to supplement its production, this portion of Abbott's Motion

is **denied without prejudice.**  Abbott may reurge its motion to compel on this topic, if

necessary.

### D.  Communications with Group Purchasing Organizations

According to Abbott, RTI has only provided documents related to communications

between Abbott and RTI related to GPOs.  Dkt. No. 114 at 12.  Abbott requests documents

concerning RTI's contacts with the GPOs before, during, and after the NMDA.  *Id*.  Abbott

argues that those documents are relevant to RTI's claim that it looked to Abbott because RTI

could not win contracts with the GPOs on its own.  *Id*.

RTI responds that it has already produced significant information regarding its contracts

with and bids to GPO's in response to Abbott's requests.  Dkt. No. 136 at 6.  Nevertheless, RTI

adds that it will additionally produce files of information related to specific GPOs to the extent it

has any and with the exception of confidential information related to settlement negotiations with

Premier and Novation.  *Id.*

In light of RTI's agreement to supplement its production, this portion of Abbott's Motion

is **denied without prejudice.**  Abbott may reurge its motion to compel on this topic, if

necessary.

### E.  Board of Directors Meeting Documents

Abbott requests documents concerning meetings of RTI's Board of Directors from

January 1, 1997 to December 31, 2008, including but not limited to notices, announcements,

minutes, agendas, attendance records, and resolutions or actions taken at any such meeting.  Dkt.

No. 114 at 12.  RTI agrees to produce Board of Directors meeting minutes and packets "that

mention any issue relevant to this case." Dkt. No. 136 at 3-4.  RTI, however, will redact these minutes and packets "for any privileges or irrelevant information, including but not limited to sales and market information regarding products not included in [RTI's] damages model and that are otherwise not at issue in this litigation, communications about legal advice, confidential personnel matters, and other similar types of information not relevant to the claims and issues in this litigation." *Id*. at 4.

Abbott objects to RTI's redaction of the documents for relevancy "because there is a Protective Order in place in this case that amply protects RTI's interests in confidentiality, and because any issue concerning the non-relevancy of information can be addressed by RTI at the Motion in Limine phase." Dkt. No. 185 at 1.  In response, RTI argues that Abbott has also redacted documents for "apparently irrelevant information." Dkt. No. 197 at 1.  RTI offers to provide unredacted Board meeting minutes, resolutions, and packets for *in camera* inspection so that the Court can see the nature of [its] redactions." *Id.*

The Protective Order in this case includes a provision that confidential information shall be so designated and not disclosed or disseminated to anyone, with certain exceptions.  *See* Dkt. No. 31.  The Protective Order also includes a so-called "claw-back provision." *Id*. at ¶4.  RTI does not explain why the Protective Order cannot adequately protect its confidential information. Further, as Abbott argues, relevancy issues can be addressed via motions in limine.  RTI is entitled, of course, to redact privileged information.  There is presently no dispute about whether certain specific information is privileged or whether certain redactions are proper, and the Court sees no reason to review documents *in camera* absent one.  Accordingly, Abbott's motion to compel as to this topic should be **granted.**  RTI should produce Board of Directors meeting

minutes and packets as agreed in unredacted form; however, RTI is entitled to redact privileged

information.

### F. Actions by Becton Dickinson

Abbott requests all documents concerning efforts by Becton Dickinson and Company

("BD") "to limit, reduce, prevent, or otherwise interfere with sales of RTI's products to the

Hospital Market during the period May 2, 2000 through December 31, 2008."  Dkt. No. 114 at

13-14.  According to Abbott, "[t]his request simply asks RTI to produce its documents relating to

the behavior of RTI's competitors in the marketplace, which RTI alleges limited and reduced the

sales of RTI's Products."  *Id*.  While RTI has produced the deposition transcripts and exhibits of

RTI's employees in its prior litigation against BD, Abbott contends that it has declined to

produce any of RTI's own documents that relate to BD's actions.  *Id*.  Abbott argues that these

documents are relevant to the claims and defenses in this case as well as RTI's potential double

recovery.  *Id*.

RTI responds that it has produced all relevant, unprotected documents related to BD.

Dkt. No. 136 at 7.  RTI argues that even though "BD's actions and any resulting damage to [RTI]

is wholly separate from Abbott's failure to use commensurate efforts when marketing [RTI's]

products and that resulting damage," RTI has produced depositions, exhibits, expert reports, and

expert files from the 2001 case against BD.  *Id*.

In reply, Abbott argues that RTI has only produced the formal deposition transcripts and

exhibits of RTI employees from its prior litigation against BD, but none of its own documents.

Dkt. No. 185 at 3.  Abbott submits that it "is entitled to documents that reflect what RTI believed

BD and the GPOs were doing to harm RTI in any time period for which RTI seeks damages in

this case." *Id*. RTI replies that it has met its discovery obligations with regard to this request.

Dkt. No. 197 at 2. RTI argues that it has searched its files using the search terms suggested by

Abbott and has produced many of its own documents. *Id*. RTI adds that Abbott's request "is an

inappropriate request to make an unrelated summary judgment or trial argument in discovery

papers, and should not be permitted to form a basis for Abbott's motion to compel." *Id*. at 3. To

the extent that it seeks damages for a certain time period, RTI should produce documents related

to BD's efforts to compromise or disrupt sales of RTI's products or similar products for that time

period. The responsive documents should not be limited to those that are merely litigation-

related. To that extent, Abbott's motion to compel as to this topic should be **granted.**

### G. Kaiser Permanente

Abbott requests documents related to the contract between RTI and Kaiser Permanente

for RTI's products. Dkt. No. 114 at 15. RTI responds that it has produced responsive

information and agrees to produce its Kaiser file and any other responsive document if and when

it is located after a reasonable search. Dkt. No. 136 at 8. Abbott replies that RTI's production

should include internal documents evaluating the Kaiser/RTI relationship, the termination of that

relationship and documents showing whether information concerning the same was shared with

Abbott. Dkt. No. 185 at 3. RTI responds that its Kaiser file would include that type of

information. Dkt. No. 197 at 3.

In light of RTI's agreement to supplement its production, this portion of Abbott's Motion

is **denied without prejudice.** Abbott may reurge its motion to compel on this topic, if

necessary.

**H. Sales and Marketing Documents**

Abbott requests documents related to RTI's marketing and business plans for RTI's products in the U.S. hospital syringe marketplace from 1997 to 2008. Dkt. No. 114 at 15-16. According to Abbott, RTI has produced its business plans but no other relevant documents and has restricted production up to the year 2005. *Id.* at 16. Abbott adds that RTI has not produced conversation logs and notes, "which Abbott needs to verify that all sales contact documents and reports for 1997 through 2008 have been produced." *Id.*

RTI responds that it has produced its business plans and spreadsheets with various assumptions and calculations, sales call notes, as well as its sales database. Dkt. No. 136 at 9. RTI adds that Abbott's request is unduly burdensome, overly broad, and includes irrelevant information. *Id.* RTI adds that "sales information is most easily accessible in other formats, including [RTI's] sales database and public filings, and has been produced to Abbott." *Id.*

The main issue with respect to this topic appears to be the relevant time period. As discussed above, if RTI requests damages for the period 2000 to 2008, Abbott should be able to defend against that claim with responsive documents from the same time period. *See supra* Part II.A. Accordingly, Abbott's motion to compel as to this topic should be **granted**. RTI is ordered to produce responsive documents through December 31, 2008.

**I. Thomas Shaw Interviews**

Abbott requests documents concerning any interview of Thomas Shaw from 1997 through 2008. Dkt. No. 114 at 16. According to Abbott, RTI stated that such documents may be obtained from another source. *Id.* RTI responds that it has produced information regarding Mr. Shaw's Theta interview, which is the only specific interview Abbott has requested. Dkt. No. 136

at 9-10.  RTI adds that it "does not keep a file of all Thomas Shaw interviews, nor are its records

organized in suhc a way that these documents could easily be found."  *Id*. at 10.  RTI suggests

that Abbott "specify what information it wants, so that [RTI] can assess the burden associated

with locating that information."  *Id*.  Abbott replies that it has not been able to locate the

documents referenced by RTI within its production and requests that the Court order RTI to

identify such documents by bates number.  Dkt. No. 185 at 3-4.  Abbott also requests that RTI

produce a list of interviews and that it immediately produce any and all documents pertaining to a

1998 interview that Mr. Shaw gave to Business Weekly.  *Id*.  RTI argues that it neither has a list

of interviews, nor an obligation to create such a list for Abbott.  Dkt. No. 197 at 3.  RTI does

agree to search its records for any documents responsive to the 1998 Business Week interview.

*Id*. at 4.

Abbott provides no support for its position that RTI should be ordered to produce a list of

interviews given by Mr. Shaw.  Other than the Business Week interview to which RTI agreed to

search its record, Abbott's motion to compel as to this topic should be **denied.**

### J.  Consequences for RTI's Employees

Abbott argues that RTI has failed to provide requested documents concerning RTI's claim

that Abbott's alleged breach impacted RTI's employees.  Dkt. No. 114 at 17.  RTI responds that

it will produce a spreadsheet showing the RTI employees who surrendered benefits after Abbott

called the note.  Dkt. No. 136 at 10.  Abbott also requests documents and correspondence that

reflect or state what RTI told its employees about why they were being asked to surrender

benefits.  Dkt. No. 185 at 4.  RTI replies that it has reexamined its records and believes that it has

produced all relevant, non-privileged information on this issue.  Dkt. No. 197 at 4.

In light of RTI's agreement to produce a spreadsheet, this portion of Abbott's Motion is **denied without prejudice.**  Abbott may reurge its motion to compel on this topic, if necessary.

### K. Documents Underlying RTI's Damages Calculation

Abbott requested certain categories of documents that were either referenced at the deposition of RTI's damages expert, Dr. House, or that relate to his calculation of damages.  Dkt. No. 114 at 17.  Abbott argues that Fed. R. Civ. P. 26(a)(1)(A)(iii) requires RTI to provide the documents which form the basis of its damages calculation as if requested under Rule 34.  *Id*. at 18.  According to Abbott, "RTI has merely referred Abbott to the produced files of its experts in purported satisfaction of this requirement."  *Id*.  Abbott contends that the experts' file fails to provide certain documents underlying the damages calculation as to the following:

(1) records or documents which set out the basis of the overhead calculation used by Dr. House;

(2) documents which constitute or bear upon the principles governing the expert's allocation of costs to overhead (*e.g.*, allocation policies, guidance documents, standards);

(3) documents which set out the composition of the "cost of sales" figure in the Annual Reports from which RTI's expert deducted the "fixed costs" to arrive at his cost of production.

RTI responds that it has provided Abbott ample information regarding RTI's damages calculations.  Dkt. No. 136 at 10.  RTI argues that Abbott has not served any interrogatory or request for production relating to calculation of overhead costs, costs of sales, and fixed costs. *Id*.  RTI also submits that it has produced everything it provided to its damages expert.  *Id*. at 11. In addition, RTI claims that it has provided numerous documents, RTI's entire expert file, and ample opportunity to depose three witnesses on this information.  *Id*.  RTI offers to produce Dr.

House for deposition to discuss these issues.  *Id.*

In reply, Abbott maintains that the categories of documents requested were either not produced or not identifiable as such when produced.  Dkt. No. 185 at 4.  Abbott claims that while RTI provided certain spreadsheets containing valuations of overhead costs, RTI has yet to identify cost data used to calculate those overhead costs.  *Id*. at 5.  Abbott requests an order compelling RTI to either produce the requested documents or provide bates label numbers for those documents if already produced.  *Id*.  RTI replies that it has produced all documents provided to its expert on this issue.  Dkt. No. 197 at 4.

Fed. R. Civ. P 26(a)(1)(A) requires a party to produce "a computation of each category of damages claimed by the disclosing party ... [and] documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Similarly, Fed. R. Civ. P. 26(a)(2)(B)(ii) requires disclosure of "the data or other information considered by the [expert] witness in forming [his opinions]."  The dispute here appears based on whether RTI should identify specifically which documents were used in reaching certain calculations.  On balance, Abbott's argument is unavailing.  First, the Federal Rules do not mandate that a party enumerate on a document-by-document basis the data points involved in reaching expert opinion.  They only require disclosure of data or other information, and RTI represents that it has produced all documents considered by Dr. House.  Second, as RTI argues, such information is more properly obtained via an interrogatory or a request for production.  Accordingly, Abbott's motion to compel as to this topic should be **denied.**

**L. Privilege Log**

Abbott also requests RTI's privilege log.  Dkt. No. 114 at 19.  It appears that neither party

has provided a privilege log.  Dkt. No. 129 at 5.  The Court orders that each party shall produce a

privilege log to the opposing party within ten (10) days of the date of this order.  The parties shall

have fourteen (14) days after that to file objections to the privilege log, if necessary.  The

privilege log should also include entries describing redactions in produced documents.

**III. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel , Dkt. No. 114, is hereby

**GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

(1) Abbott's motion as to the relevant time period is hereby **GRANTED**.  RTI is hereby

**ORDERED** to produce documents all responsive documents through December 31, 2008 by

June 4, 2010 at 5:00 p.m. CDT.

(2) Abbott's motion as to price information is hereby **DENIED WITHOUT**

**PREJUDICE**.  Abbott may reurge its motion on this topic, if necessary.

(3) Abbott's motion as to sales tracing reports is hereby **DENIED WITHOUT**

**PREJUDICE**.  Abbott may reurge its motion on this topic, if necessary.

(4) Abbott's motion as to communications with GPOs is hereby **DENIED WITHOUT**

**PREJUDICE**.  Abbott may reurge its motion on this topic, if necessary.

(5) Abbott's motion as to the Board of Directors documents is hereby **GRANTED**.  RTI

is hereby **ORDERED** to produce documents all responsive documents by June 4, 2010 at 5:00

p.m. CDT.

(6) Abbott's motion as to the Becton Dickinson documents is hereby **GRANTED**.  RTI is

hereby **ORDERED** to produce documents all responsive documents by June 4, 2010 at 5:00 p.m. CDT.

(7) Abbott's motion as to Kaiser Permanente is hereby **DENIED WITHOUT PREJUDICE**.  Abbott may reurge its motion on this topic, if necessary.

(8) Abbott's motion as to the sales and marketing documents is hereby **GRANTED**.  RTI is hereby **ORDERED** to produce documents all responsive documents by June 4, 2010 at 5:00 p.m. CDT.

(9) Abbott's motion as to the Thomas Shaw interviews is hereby **DENIED.**

(10) Abbott's motion as to consequences for RTI employees is hereby **DENIED WITHOUT PREJUDICE**.  Abbott may reurge its motion on this topic, if necessary.

(11) Abbott's motion as to the damages documents is hereby **DENIED.**

(12) Both parties are hereby **ORDERED** to produce a privilege log to the opposing party within ten (10) days of the date of this order.  The parties shall have fourteen (14) days after that to file objections to the privilege log, if necessary.

**IT IS SO ORDERED.**

**SIGNED this 20th day of May, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE