IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| **RETRACTABLE TECHNOLOGIES INC.,** § § § | |
| **Plaintiffs,** § § | |
| § | CIVIL ACTION NO. 5:05-CV-157 |
| v. § § | |
| **ABBOTT LABORATORIES, INC.** § § | |
| **Defendant.** § § | |

**O R D E R**

Before the Court is Plaintiff's Motion for Partial Summary Judgment and Brief in Support. Dkt. No. 117. Also before the Court are Defendant's Response in Opposition, Plaintiff's Reply, and Defendant's Sur-reply. Dkt. Nos. 144, 170, and 194, respectively. Having considered all relevant papers and pleadings, the Court finds that Plaintiff's motion should be **granted in part and denied in part.**

I. BACKGROUND

Plaintiff Retractable Technologies, Inc. ("RTI") filed this suit on August 12, 2005, Dkt. No. 1, alleging that Defendant Abbott Laboratories, Inc. ("Abbott") breached a contract it entered into with RTI, the National Marketing and Distribution Agreement ("NMDA"). In particular, RTI alleges that Abbott failed to market RTI's products with efforts "at least commensurate with those used to market and distribute its own products of similar nature and comparable market potential." RTI also alleges fraud on the part of Abbott. Abbott answered and asserts several counterclaims of its own against RTI related to the alleged breach of the NMDA as well as

alleged breaches of warranty. This case is on the Court's July 2010 trial docket. RTI now moves for partial summary judgement on Counts III, VI, and VII of Abbott's counterclaims as well as Abbott's laches and unclean hands defense.

## II. LEGAL PRINCIPLES

In a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court does not, however, in the absence of any proof, assume that the non-moving party could or would prove the necessary facts. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *See Burgos v. S.W. Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir. 1994) (citing *Anderson,* 477 U.S. at 248). The non-movant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual conclusions and findings. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that

is, if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

## III. DISCUSSION

### A. Duty to Discuss Transfer Prices (Count III)

RTI moves for summary judgment on Count III of Abbott's counterclaim in which Abbott alleges that RTI refused to meet and discuss transfer prices in good faith. Dkt. No. 117 at 9-12. In response, Abbott states that it "will not pursue Count III at trial." Dkt. No. 144 at 2. In light of Abbott's position, RTI's motion for partial summary judgment as to Count III should be **granted**. Abbott's Count III should be **dismissed with prejudice**.

### B. Abbott's Warranty Claims (Counts VI and VII)

Abbott asserts counterclaims based on an alleged breach of the implied warranty of merchantability (Count VI) and an on alleged breach of express warranty (Count VII). RTI moves for partial summary judgment on the grounds that there is no evidence of any damage to Abbott as a result of any such alleged breach of warranty. Dkt. No. 117 at 13. RTI submits that neither Abbott's Initial Rule 26 disclosures nor its supplemental Rule 26 disclosures provide any quantification of damages for breaches of either warranty. *Id*. Additionally, RTI argues that the report of Abbott's damages expert, Dr. Welch, similarly fails to identify damages for Abbott's claimed breaches of either express or implied warranties. *Id*. RTI also submits that Abbott's response to its interrogatory requesting Abbott to "identify all damages you are seeking for all of your asserted counterclaims" was "completely silent about any damages sought in the counterclaims for warranty breaches." *Id*. at 13-14. RTI claims that the "[a]bsence of connection between an alleged breach of contract and alleged damages precludes recovery." *Id*. at 14.

Abbott responds that it is entitled to nominal damages for RTI's breaches of warranty. Dkt. No. 144 at 6. Abbott submits that "nominal damages are particularly appropriate here, where Abbott had to put in additional sales efforts and likely lost sales as a result of the poor quality of RTI products, but such effects are difficult or impossible to quantify." *Id.* Abbott argues that it is because of such difficulties that nominal damages are awarded. *Id.* at 7.

RTI replies that Abbott's claim for nominal damages lacks merit. Dkt. No. 170 at 2. "Nominal damages are not available when a party incurs actual damages but fails to prove the amount[,]" RTI argues. RTI characterizes the harm allegedly suffered by Abbott as only economic harm that can be supported by evidence, which Abbott fails to offer. *Id.* at 2-3. Abbott replies that RTI mischaracterizes both Abbott's claim and the governing law. Dkt. No. 194 at 1-2. Abbott argues that it is not seeking nominal damages as some sort of compensation but instead, "true nominal damages." *Id.* at 2.

Under Texas law, it is well-settled that nominal damages are available for breach of contract cases.[1] *See MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664 (Tex. 2009); *see also Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 663 (Tex. 2009) (Brister, J., dissenting) ("Since its earliest days, Texas law has provided that a party who has suffered no damages may still obtain nominal damages for breach of contract."). Nominal damages cannot be awarded as compensation. *MBM Financial*, 292 S.W.3d at 665. "[T]hey are for cases in which there are no damages, or none that could be proved." *Id.* A party seeking nominal damages need not demonstrate a specific amount of

---

[1] Claims for breach of the implied warranty of merchantability and any express warranty are contractual in nature. *See* TEX. BUS. & COM. CODE ANN. § 2.314 (2009); *see also Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60-62 (Tex. 2008).

nominal damages nor prove actual damages in order to receive nominal damages. *Centre Equities, Inc. v. Tingley*, 106 S.W.3d 143, 154 n.7 (Tex. Civ. App.–Austin 2003, no pet.) ("When a plaintiff fails to prove actual damages resulting from a breach of contract, nominal damages are available upon proof of a contract and a breach thereof."). Mere proof of the making of the contract and the subsequent breach fully prove a claimant's cause of action for which he is entitled to recover at least nominal damages, regardless of whether actual damages are proved. *Houston Pipe Line Co. v. Oxy Petroleum, Inc.*, 597 S.W.2d 57, 59 (Tex. Civ. App.– Corpus Christi 1980, writ dism'd); *see also MBM Financial*, 292 S.W.3d at 664 ("The law is, that if the contract is proven to be broken, the law would give some damage, sufficient to authorize a verdict for the plaintiff, although, in the absence of proof of special loss, the damages would be nominal only.").

In this case, RTI does not appear to dispute Abbott's purported entitlement to nominal damages. Instead, RTI argues that any such damages would be better characterized as actual damages, of which Abbott has offered no evidence. According to RTI, the "additional sales efforts" and "likely lost sales" Abbott submits it incurred would, if true, result in actual, economic damages. Dkt. No. 170 at 2.

RTI's position that Abbott may not recover nominal damages on its breach of warranty claims is inconsistent with established Texas law. Nominal damages can be obtained simply by showing formation and breach of a contract. *Houston Pipe Line*, 597 S.W.2d at 59. RTI restricts its attack on Abbott's claims to an argument that Abbott cannot prove and has not presented evidence on actual damages. But Abbott need not prove actual damages. That Abbott's purported harm can be characterized as "economic harm" is insufficient for a summary dismissal

of the warranty claims.[2] Accordingly, RTI's motion for partial summary judgment as to Counts VI and VII should be **denied**.

### C. Implied Warranty of Merchantability

RTI next moves for summary judgment on Abbott's breach of implied warranty of merchantability counterclaims arguing that there is no such implied warranty under the NMDA as claimed. Dkt. No. 117 at 15. RTI submits that "implied warranties are created by operation of law and they arise only when public policy creates a compelling need for them." *Id*. RTI also argues that the implied warranty of merchantability created by the Uniform Commercial Code ("UCC") does not apply to the NMDA. *Id*. at 16. RTI claims that the UCC only applies to transactions involving services only if the "dominant factor" or "essence" of the transaction is the sale of goods. *Id*. Here, RTI submits, the services aspect predominates in light of the NMDA's specific language. *Id*. at 16-17.

Abbott responds that RTI's sale of goods under the NMDA is governed by the UCC's implied warranty of merchantability because the NMDA was a contract for the sale of goods. Dkt. No. 144 at 8. Abbott argues that the NMDA is a distributorship agreement, which Texas courts have held constitute contracts for the sale of goods. *Id.* at 9. Abbott submits that "RTI's obligations under the NMDA almost entirely center around the sale of such goods to Abbott."

---

[2] RTI argues that this situation resembles that of *MBM Financial*. In *MBM Financial*, the Texas Supreme Court reviewed an award of $1000 as nominal damages and found that the $1000 was better characterized as "rough compensation" for wasted time. *MBM Financial*, 292 S.W.3d at 665. The Court held that nominal damages are not for compensation and no evidence could sustain the award as either actual or nominal damages. *Id*. Further, the *MBM Financial* Court discussed that nominal damages are supposed to be a trifling sum and "$1000 hardly falls into that category." *Id*. Thus, whether damages are truly nominal damages is based on the award and the surrounding evidence. Here, there is no specific award to review for evidentiary support as either actual or nominal damages. Even if the Court accepted the notion that Abbott's harm could be quantified as economic, it would not serve to preclude Abbott from recovering nominal damages on its breach of warranty claims.

*Id*. Abbott also adds that Texas common-law would provide an implied warranty of merchantability. *Id*. at 10.

In reply, RTI echoes its argument that the UCC is not applicable because the NMDA is not focused on the sale of goods but performance of services. Dkt. No. 170 at 3-4. According to RTI, "the essence of the NMDA is services." *Id*. As support, RTI points to the NMDA's labeling of Abbott as "marketer" and "independent contractor, a designation that implies that a service is being provided that would not be needed in a mere sales contract." *Id*. at 4. Abbott responds that the NMDA is a distributorship agreement as its name implies, which renders the UCC applicable. Dkt. No. 194 at 3. Abbott adds that RTI's only compensation under the NMDA comes from purchases of goods from RTI by Abbott . *Id*.

There appears to be no dispute that the NMDA involved, at least in part, the sale of goods. There is similarly no dispute that Texas's version of the UCC, as codified in the Texas Business and Commerce Code § 2.314(a), includes an implied warranty of merchantability. The primary dispute is whether Tex. Bus. & Com. Code § 2.314(a) and the UCC or any other means provide an implied warranty of merchantability. Where a contract is a hybrid, i.e. contains a mixture of sales and services, the UCC applies if the sale of goods is the "dominant factor" or "essence" of the transaction. *See Continental Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 787 (Tex. App.– Houston [14th Dist.] 2001, no pet.). RTI argues that the essence of the NMDA, despite being a hybrid contract, is services and not goods making the UCC inapplicable. The Court disagrees.

As RTI submits, the nature of the relationship defined by the NMDA is a collaboration to market RTI's needle products. *See* Dkt. No. 144-2 at 2. RTI does not dispute Abbott's

characterization of this relationship as a distribution agreement.[3] As an initial matter, Texas courts consider distributorship agreements "contracts for the sale of goods" for UCC purposes. *Continental Casing*, 38 S.W.3d at 788 (joining "the overwhelming majority of jurisdictions" that have concluded that distributorship agreements are subject to the UCC); *see also East Hill Marine, Inc. v. Rinker Boat Co., Inc.*, 229 S.W. 813, 819-820 (Tex. App.—Fort Worth 2007, no pet.) (same).

Furthermore, examination of the NMDA itself supports the conclusion that the "essence" of the contract is RTI products. Several sections of the NMDA refer to the parties' obligations with respect to the sale – as opposed to marketing – of the needle products between the Marketer Abbott and the Manufacturer RTI. For example, Section 3 includes provisions related to purchase orders between Abbott and RTI, delivery and shipping between Abbott and RTI, and return of defective equipment by Abbott to RTI; Section 4 includes provisions on dealing with recalls and complaints related to RTI's products; and Section 5 relates to pricing and pricing reports of RTI's products. *See* Dkt. No. 144-2 at 2-6.

In short, the NMDA as a whole describes the relationship between RTI as the manufacturer and Abbott as the distributor, the foundation of which is RTI's products. Put another way, RTI's products are just as essential, if not more so, to the agreement as Abbott's services. Thus, the NMDA is a contract for the sale of goods within the scope of the UCC, and RTI's motion for summary judgment as to Abbott's breach of the implied warranty of merchantability claims should be **denied.**

---

[3] Indeed, the name of the agreement is the National Marketing and *Distribution* Agreement.

### D. Recovery for Unsold Inventory

Abbott seeks to recover for the value of unsold inventory of RTI products in the amount of $2.5 million. RTI argues that Abbott's claim for unsold inventory has no contractual basis and that no extra-contractual basis exists. Dkt. No. 117 at 17. RTI submits that the partes agreed that RTI would have "the option—not the obligation—to buy back leftover inventory" upon termination of the NMDA. *Id*. at 18. Thus, RTI argues, it had no duty as a matter of law to buy any inventory back from Abbott. *Id*. at 19.

Abbott responds that RTI wrongfully terminated the NMDA and now Abbott seeks to recover "(1) lost profits for RTI products that Abbott would have sold during the remaining term of the NMDA and (2) the value of the unsold inventory that was left in Abbott's possession when RTI terminated the NMDA." Dkt. No. 144 at 2-3. Abbott claims that it could not sell this inventory because of RTI's improper termination. *Id*. Further, according to Abbott, the NMDA precludes Abbott from selling any materials bearing RTI's marks after termination of the NMDA for any reason. *Id.* at 3. Abbott submits:

> By terminating the NMDA early, RTI necessarily left Abbott with a large amount of inventory that Abbott would otherwise have sold. Abbott's loss, in terms of Abbott's inability to recoup the costs of that inventory, was a direct result of RTI's termination, and RTI is liable for such damages regardless of whether or not it would have been required to buy back inventory upon proper termination of the NMDA.

*Id*. at 4. According to Abbott, it is entitled to restitution for its expenses in purchasing as well as its expected future profits that it would have earned. *Id*. at 4-5.

In reply, RTI argues that the parties' agreement regarding inventory post-termination does not create an obligation on RTI's part to buy back the inventory nor does it create a valid claim

for recovery on Abbott's part. Dkt. No. 170 at 6. RTI adds that Abbott—contrary to its arguments—could have properly sold the inventory of RTI products under the NMDA after termination. *Id*. at 6-7.

In sur-reply, Abbott contends that it could no longer sell the inventory after RTI terminated the NMDA. Dkt. No. 194 at 5. Abbott adds that it also could not recoup the amount of money it had spent and now seeks direct damages for the out-of-pocket. *Id*. Abbott adds that it makes no difference whether or not RTI had an obligation to buy back the inventory. *Id*. If the NMDA had expired in 2005 as planned, Abbott argues that it "would have been able to plan in advance for the transition period and minimize any losses related to unsold inventory," and RTI's wrongful termination prevented Abbott from taking such steps. *Id*. Abbott also submits that RTI's argument that Abbott could have sold the inventory does not accord with the NMDA, which makes plain that Abbott's right to sell RTI products ended when the NMDA was terminated. *Id*. at 5-6.

Abbott does not seem to dispute that RTI had only the option and not the obligation to repurchase the products Abbott had purchased prior to termination. Dkt. No. 194 at 5 ("It makes no difference whether or not RTI would have been required to repurchase inventory if the NMDA had continued until its expiration in 2005."). Abbott does not seek damages for RTI's refusal to repurchase the inventory. Instead, Abbott bases its claim for the value of the inventory and the lost profits on RTI's alleged breach of its duty to continue performing under the NMDA and allegedly improper termination of the NMDA. *Id*.

RTI argues that the Court need not consider the propriety of RTI's termination in deciding the present motion; however RTI's allegedly improper termination provides the basis

for Abbott's damages for unsold inventory. And whether RTI's termination of the NMDA was proper is a question of material fact precluding summary judgment. Additionally, the NMDA is unclear as to whether Abbott could have properly sold the inventory when RTI terminated the agreement. Section 9 of the NMDA describes the parties' agreement with respect to the term and termination of the NMDA. Section 9.5 provides that in the case of Termination for Insolvency: "Either party may terminate this Agreement by giving the other at least sixty (60) days prior written notice upon the bankruptcy or insolvency of the other party." Section 9.7(d), entitled "Products," states:

> Upon termination of this Agreement, Manufacturer [RTI] shall have the option to repurchase from Marketer [Abbott] all or any portion of Products remaining in Marketer's inventory[.] . . . If this agreement is terminated pursuant to Section 9.5, then Marketer shall have the right to market and distribute all remaining inventory in Marketer's possession as of the date of termination of this Agreement.

Thus, under Section 9.7(d), Abbott shall have the right to market remaining inventory if the NMDA is terminated for insolvency. Section 9.7(c) provides in part that "effective upon the termination of this Agreement, Marketer shall cease to use all trademarks and trade names of Manufacturer related to Product in the Territory." Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *Corley v. Entergy Corp.*, 246 F. Supp. 2d. 565, 573 (E.D. Tex. 2003) (Schell, J.). An ambiguity does not arise merely because the parties advance conflicting contract interpretations. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). If policy language is worded so it can be given a definite or certain legal

meaning, it is not ambiguous and can be construed as a matter of law. *Id.* If there is a factual question as to the parties' intent, then that question is appropriate for consideration by a jury. *Corley*, 246 F. Supp. 2d at 574; *see also Trinity Universal Ins. Co. v. Ponsford Bros.*, 423 S.W.2d 571, 575 (Tex. 1968).

RTI claims that nothing in the NMDA prevented Abbott from selling the inventory while Abbott submits that Section 9.7(c) prevented it from selling the remaining inventory. Section 9.7(d) appears to restrict Abbott's ability to sell remaining inventory to termination for insolvency. No other section expressly discusses Abbott's right to sell remaining inventory. Such a dispute implicates questions of the parties' intent, which also counsels against summary dismissal. Accordingly, RTI's motion for summary judgment as to Abbott's damages related to unsold inventory should be **denied.**

### E. Unclean Hands and Laches

RTI moves for summary judgment as to Abbott's defenses of unclean hands and laches. Dkt. No. 117 at 19. RTI argues that such equitable defenses are available only in suits in equity. *Id.* Because RTI seeks damages and not equitable relief in its breach of contract and fraud claims, those defenses are not viable and summary judgment should be granted as to those defenses. *Id.*

Abbott responds that it does not intend to pursue a laches defense at trial. Dkt. No. 144 at n.2. But Abbott argues that its unclean hands defense is properly raised. *Id.* at 11. Abbott submits that RTI's misrepresentations about its contract with Premier, its contract with Kaiser Permanente, sales volume and price, and recalls induced Abbott to enter into the NMDA with RTI. *Id.* at 11-12. Abbott argues that Texas courts have permitted the unclean hands defense in


suits based on breach of contract and fraud seeking damages. *Id.* at 12. Abbott adds that unclean hands has also been tried before juries on *quantum meruit* claims seeking money damages. *Id.*

The doctrine of "unclean hands" allows a court to refuse to grant equitable relief to a plaintiff who is guilty of inequitable conduct. *See, e.g., Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 536 n. 4 (Tex. App.—Dallas 2007, pet. denied) ("The doctrine of unclean hands operates as a bar to the equitable relief of specific performance."). The parties dispute whether unclean hands is a permitted defense in a breach of contract suit seeking damages and no equitable relief such as specific performance.

Abbott cites *Kuehnert v. Texstar Corp.*, 412 F.2d 700, 704 (5th Cir. 1969), for the proposition that the doctrine of unclean hands is equally suited to damages actions under Texas law. Several subsequent cases, however, have held the opposite. *See, e.g., Furr v. Hall*, 553 S.W.2d 666, 672 (Tex. App.—Amarillo 1977, writ ref'd n.r.e.) ("the 'clean hands' maxim is strictly an equitable doctrine not applicable outside equitable proceedings"); *Ligon v. E.F. Hutton & Co.*, 428 S.W.2d 434, 437 (Tex. App.—Dallas 1968) (same); *Beadle v. Bonham State Bank*, 880 S.W.2d 160, 162 (Tex. App.—Texarkana 1994, j'ment aff'd in part, rev'd in part, 907 S.W.2d 465 (Tex. 1995)) (same); *VT, Inc. v. GEICO Ins. Co.*, No. Civ.A.3:03-CV-0522-P, 2004 WL 1373132, at *10 (N.D. Tex. June 16, 2004) (same, citing *Furr v. Hall*); *see also Harvey v. Casebeer*, 531 S.W.2d 206, 208 (Tex. Civ. App.—Tyler 1975, no writ) (holding that a suit on a promissory note for money damages "need not invoke the equity jurisdiction of the court" for its remedy, so "the doctrine of unclean hands is not applicable").

After review, Texas law does not provide for the defense of unclean hands in suits not seeking equitable relief or invoking the equity jurisdiction of the court, and neither party

contends that this suit is equitable in nature. Abbott's arguments regarding the misrepresentations made by RTI about RTI's contracts and sales volume are more properly considered in conjunction with a separate affirmative defense of fraud. *See Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879-880 (Tex. 1999). Additionally, those misrepresentations could be relevant to a separate counterclaim for fraudulent inducement. *See Albritton v. Henry S. Miller Co.*, 608 S.W.2d 693, 694-695 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.), disapproved on other grounds, *McConnell v. Southside ISD*, 858 S.W.2d 337 (Tex. 1993). Accordingly, RTI's motion for summary judgment as to Abbott's affirmative defense of unclean hands should be **granted**. Further, in light of Abbott's position as to its laches defense, RTI's motion for summary judgment as to Abbott's affirmative defense of laches should similarly be **granted.**

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment and Brief in Support, Dkt. No. 117, is hereby **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

(1) Plaintiff's motion for summary judgment as to Abbott's Count III is hereby **GRANTED**. Abbott's Count III is hereby **DISMISSED WITH PREJUDICE**.

(2) Plaintiff's motion for summary judgment as to Abbott's Counts VI and VII is hereby **DENIED**.

(3) Plaintiff's motion for summary judgment as to Abbott's breach of the implied warranty of merchantability claims is hereby **DENIED.**

(4) Plaintiff's motion for summary judgment as to Abbott's claim for recovery of unsold inventory is hereby **DENIED.**

      (5) Plaintiff's motion for summary judgment as to Abbott's affirmative defenses of laches and unclean hands is hereby **GRANTED** as to both affirmative defenses.

    **IT IS SO ORDERED.**

    **SIGNED this 15th day of June, 2010.**

                                              _____
                                              DAVID FOLSOM
                                              UNITED STATES DISTRICT JUDGE